STATE OF VERMONT  WINDHAM SUPERIOR COURT
WINDHAM, SS:  DOCKET NO. 124-3-15 Wmcv

| | | |
|---|---|---|
| EFFIE MAYHEW, | ) | CIVIL UNIT |
|     Plaintiff, | ) | |
| | ) | RECEIVED |
| v. | ) | 2:15 cv 147 |
| | ) | JUL - 8 2015 |
| HERMITAGE INN, LLC, | ) | |
|     Defendant. | ) | U.S. DISTRICT COURT BURLINGTON, VT |

## COMPLAINT

NOW COMES Plaintiff Effie Mayhew, by and through her attorney Caroline S. Earle, and hereby complains as follows:

### The Parties

1. At all relevant times, Plaintiff Effie Mayhew has been a resident of the County of Windham and State of Vermont.

2. At all relevant times, Defendant Hermitage Inn, LLC, has been a corporation doing business in the County of Windham and State of Vermont.

### General Background

3. Originally established in 1962, Defendant Hermitage Inn is a luxury hotel and the anchor property of the Haystack Club, an exclusive, four seasons private club-community with hundreds of members.

4. Owner Jim Barnes is a Connecticut businessman who prides himself on having built companies worth over one billion dollars in revenues and employing over a thousand individuals.

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit

1

Employment History of Plaintiff Effie Mayhew

5. Plaintiff Effie Mayhew was hired at Defendant Hermitage Inn in April 2014 as a full time employee of the Inn in the Buildings and Grounds Department. In that capacity, she was supervised by Ben Fritz and her duties consisted largely of helping to maintain the resort's gardens.

6. Shortly after starting her employment, Mayhew discovered that the Inn had two resident horses, Will & Bill. The horses were receiving minimal care from an outside contractor. Given her lifelong love of (and experience with) horses, Mayhew expressed interest in providing in-house care for the horses, an interest that Defendant's management team quickly took advantage of by offering caretaker responsibility for Will and Bill to Mayhew.

7. As the horses' in-house caretaker, Mayhew observed immediately that their manes were untended, their hooves were in poor shape and their pasture was not adequate for their needs. Mayhew took the initiative in remediating these deficiencies.

8. Defendant responded positively to Effie's efforts. Management was pleased that they now had an employee with this expertise. They promptly terminated their outside contractor and expanded Mayhew's job duties to encompass care of the horses as well.

9. Mayhew learned that the Defendant's ultimate goal was to employ Will & Bill as working horses. In May 2014, at a staff party, Defendant's General Manager, Rob Aubin, approached Mayhew and told her that he was pleased

2

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit

that she had assumed care of the horses. Aubin mentioned his delight at getting rid of an outside contractor's bill. He assured Mayhew that she should purchase anything that she felt was necessary to tend to the animals.

10. After the party, Mayhew followed up on her conversation with Aubin to try and clarify the long term vision for the horses. Aubin informed her that the plan was to train them to provide carriage and sleigh rides for guests of the Inn. He authorized her to look into the purchase of a carriage and some saddles. Under this authorization, Mayhew spent long hours outside of her regular work hours researching various equipment options. She ultimately presented a proposal to Aubin, which he approved, and she placed the orders in June 2014.

11. Around this same time period, Mayhew made it abundantly clear to Aubin that she was not trained as a carriage driver. Mayhew found a local woman, Ann Brown (owner of Brookside Stables), to provide driving lessons. When Ann came to give Mayhew her first lesson on Inn grounds, she surveyed the terrain and told Mayhew that the grounds were not suitable for training. Mayhew followed up with Aubin and sought his approval to board the horses for one month with Ann, so that she could train with Will & Bill in safe conditions. With Aubin's approval and knowledge and in recognition of the long-term business plan proposed by Mayhew and the unsafe terrain at the Hermitage Inn, Will & Bill were subsequently relocated off the premises for safe training purposes.

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit

12. During the summer months, Mayhew talked with Defendant's management team about the Inn's plans for an Equestrian Center and their interest in having Mayhew manage the Center. The vision was for a high-end Equestrian Center that would board horses, and offer clinics, riding lessons and training.

13. With management's acquiescence, Mayhew researched various building options, including materials, and had discussions with the Inn's building engineer about the specifications required for the Center. In addition, she was told that once the carriage and sleigh ride program was up and running, she would receive a percentage of the sales from this program.

14. In reliance upon these concrete promises and plans, Mayhew worked 60-80 workweeks during the summer of 2014 researching, designing and budgeting these long range plans for the Inn. Mayhew estimates that she worked at least one hundred (100) hours of uncompensated overtime during this period of time.

15. Mayhew was not compensated for these extended hours because she understood that her compensation would flow directly from the proceeds of these ventures once they were up and running. The representations made to her under these circumstances were intended to, and did, induce her to work above and beyond her compensated hours to implement Defendant's business vision as discussed.

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit

16. It was therefore a shock to Mayhew when, out of the blue and despite Defendant's commitment to this vision and Mayhew's reliance upon those plans, management informed Mayhew in early August that Aubin had not approved the carriage purchase. By 08/04/14 e-mail to owner Jim Barnes and Operations Manager Mike Quinn, Mayhew set the record straight and demonstrated that this was inaccurate. She also provided a rough budget as to the cost of continued execution of the agreed-upon plan and reiterated her commitment and reliance upon that plan. Around that same time, the horses were transferred back to the Inn and back into her care.

17. Upon return of the horses to Defendant's premises and as part of her on-going caretaking duties, Mayhew discovered upon inspection that various poisonous plants were growing in multiple sections of the Inn's wooded pasture. She immediately requested new pasture land and roped off the dangerous areas with fencing. Her efforts were undermined by her manager, despite her insistence (both verbal and in writing) that to subject the horses to dangerous pasture was neglect.

18. After receiving some push-back from management on the business plans, Mayhew met with Quinn on 08/19/14 to confirm the plan moving forward as well as the common vision. At that time, Mayhew let Quinn know that the horses were not being cared for properly and likened their condition to neglect. Quinn had previously informed Mayhew that the Humane Society had already been out to check on the horses as a result of prior complaints.

FILED

MAR 25 2015

Vermont Superior Court
Windham Unit

She therefore emphasized to Quinn that the Humane Society might take a negative view toward the treatment of the horses.

19. Subsequent to that meeting, Mayhew was asked to prepare a business plan for the Equestrian Center and the carriage and sleigh ride program, which she drafted and forwarded to Quinn on 08/20/14.

20. On 08/22/14, Effie received instructions by e-mail that her work with the horses would continue for three hours/day but that others would be responsible for their water and feed. When she visited the horses that weekend, they had no fresh hay and barely any water. She emphasized to her manager that the failure to water and feed the horses is something that the Humane Society would do something about, and that if it continued that she would be compelled to call them.

21. Mayhew watered and fed the horses that weekend and then sent an e-mail to Defendant's owner reiterating her concern over the animals' well-being.

22. In the few weeks leading up to her termination, Mayhew's supervisor Ben Fritz made negative comments about an employee who was absent for six weeks as part of his National Guard service. On at least one occasion, Fritz mentioned that if the fellow employee "pull[ed] this *#$ again" (being absent for military service), he would be without a job and "it doesn't matter if he is in the Guard or not." Mayhew pointed out that such statements suggested potential violations of the laws that protect service members from job termination.

FILED
MAR 2 5 2015
Vermont Superior Court
Windham Unit

23. On 08/25/14, Fritz called Mayhew into his office and terminated her. During that conversation, Fritz stated that he was terminating Mayhew because of her advocacy on behalf of the horses and what he perceived to be threatening comments about reporting Defendant to the Humane Society for mistreatment of its animals.

24. Upon information and belief, Defendant's actions were also based at least in part upon Mayhew's comments regarding the employment protections afforded by law to service members.

25. Defendant repeatedly ignored Mayhew's warnings that its mistreatment of the horses potentially rose to the level of unlawful neglect. Defendant terminated her at least in part because of her actions in voicing these concerns, in violation of public policy. Moreover, upon information and belief, Defendant has adopted a practice of heedlessly disregarding the law in its treatment of other employees as well (for example, its apparent disregard of the protections afforded under the federal Uniformed Services Employment and Reemployment Rights Act or Vermont's own Employment Rights for Reserve and National Guard Members law).

26. The actions of Defendant, through its agents, were unlawful under Vermont law.

FILED

MAR 25 2015

Vermont Superior Court
Windham Unit

## COUNT ONE
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

27. Plaintiff incorporates by reference ¶¶ 1-26 of this Complaint.

28. In Vermont, an at-will employee may be terminated for any reason or no reason at all unless there is a clear and compelling public policy against the reason advanced for the discharge.

29. In this case, Mayhew was terminated explicitly because of her complaints and concerns related to the neglect of the Inn's horses and, upon information and belief, her comments about protections under law for military service members. At the time of her termination, Defendant's agent explicitly referred to Mayhew's complaints about the Inn's treatment and potential neglect of its animals as the grounds for her termination.

30. The Vermont Legislature has declared that it is the public policy of Vermont to protect against the neglect of animals. Consequently, Vermont law criminalizes abuse and neglect of animals, including horses. *See* 13 V.S.A §352(4). When the Defendant terminated Mayhew because of her expressed concerns related to the neglect and mistreatment of Will & Bill and her complaints to Defendant's agents about this mistreatment, it wrongfully terminated her in violation of public policy.

31. Vermont law also protects the employment and reemployment rights of members of the National Guard, as provided in 21 V.S.A. §491 et seq. Upon

8

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit

information and belief, Defendant's decision to terminate Mayhew was based at least in part on her statement in express support of this compelling public policy. Under such circumstances, Defendant's termination of Mayhew was unlawful.

32. Mayhew has incurred damages as a result of Defendant's unlawful acts.

## COUNT TWO:
## VIOLATION OF WAGE AND HOUR LAWS

33. Plaintiff incorporates by reference ¶¶ 1-32 of this Complaint.

34. Mayhew worked without compensation for at least one hundred (100) hours during the summer of 2014. Defendant acquiesced in Mayhew's additional hours of work, which were worked for Defendant's benefit. Defendant failed to pay Mayhew any regular or overtime wages for those hours.

35. Under the federal Fair Labor Standards Act, Mayhew was entitled to overtime for her hours worked each week in excess of 40 hours. 19 U.S.C. §201 et seq.

36. Under Vermont Hours and Wage Law, Mayhew was entitled to her wages for hours worked each week in excess of 40 hours. 21 V.S.A. §384 et seq.

37. Defendant failed to pay Mayhew her hourly and overtime wages in violation of federal and state law.

38. Mayhew has incurred damages as a result of Defendant's unlawful acts.

9

FILED

MAR 2 5 2015

Vermont Superior Court
Windham Unit

## COUNT THREE:
## PROMISSORY ESTOPPEL – WRONGFUL DISCHARGE

39. Plaintiff incorporates by reference ¶¶ 1-38 of this Complaint.

40. Mayhew reasonably relied upon Defendant's promise of shared revenues and a promotion to induce her to work long uncompensated hours outside of work training and caring for the horses, drafting business plans and budgets, and researching building materials, equipment and specifications for the Equestrian Center. Defendant anticipated that Mayhew would rely upon its promise in working these additional uncompensated hours.

41. Defendant's decision to terminate her under these circumstances gives rise to a claim for wrongful discharge.

42. Mayhew has suffered damages as a result of Defendant's unlawful acts.

## RELIEF SOUGHT

WHEREFORE Plaintiff Effie Mayhew respectfully requests the following relief:

- Transfer of ownership of Will and Bill to Plaintiff as a component of damages;
- Compensatory damages, including past and future wages;
- Liquidated damages as permitted under state and federal law;
- Punitive damages,
- Reasonable attorneys' fees,

10

FILED

MAR 25 2015

Vermont Superior Court
Windham Unit

- Costs of Action, and

- Any other relief that the Court might deem just and appropriate.

## REQUEST FOR JURY TRIAL

Pursuant to V.R.C.P. 38(b), Plaintiff Effie Mayhew demands a trial by jury of any issue triable of right by a jury.

Dated on this 23rd day of March, 2015 in Montpelier, Vermont.

Respectfully Submitted,

_____
Caroline S. Earle, Esq.
Attorney for Plaintiff Effie Mayhew

Law Office of Caroline S. Earle, PLC
107 State Street, PO Box 1385
Montpelier, Vermont
05601-1385

(802) 225-6495

11

FILED
MAR 25 2015
Vermont Superior Court
Windham Unit